# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* RATCLIFF, Minors.

UNPUBLISHED
June 28, 2016

No. 329567 & 329568
Clare Circuit Court
Family Division
LC No. 13-000109-NA

Before: FORT HOOD, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

PER CURIAM.

In this consolidated appeal, respondents appeals as of right a circuit court order terminating their parental rights to their four children, ARR, RLR, SFR, and HSR, pursuant to MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions), MCL 712.19b(3)(g) (failure to provide proper care and custody), and MCL 712A.19b(3)(j) (reasonable likelihood of harm). We affirm.

## I. BACKGROUND FACTS

The evidence presented established that the children had been exposed to respondents' domestic violence since birth. Respondents have a long history of domestic violence and a tumultuous relationship which consists of constantly breaking up and coming back together. In 2013, respondent father was arrested and incarcerated for physically abusing ARR. During his incarceration, respondent mother was overwhelmed with taking care of the children, so she requested that the children be placed elsewhere. During one of their domestic violence episodes, respondent father punched a hole in a wall, pushed over a table that was close to a young infant, and left the house with a knife in his hoodie. When he was subsequently arrested, he was taken to the hospital for psychiatric care because he was threatening to harm himself. Both respondents have been arrested for perpetrating domestic violence, and apparently both respondents were responsible, directly or indirectly, for physically harming at least one of the children during at least one incident.

After the children were removed from care, respondents, who had been receiving services since 2008, received additional services and showed some progress. However, the children, who had varying degrees of mental and emotional issues largely attributable to the domestic violence they had seen and experienced, were regressing after parental visitations. Ultimately, visitations were suspended and termination of parental rights was sought. At the termination hearing, it became evident that respondents were not meeting other aspects of their parent agency agreements.

-1-

## II. ANALYSIS

### A. BEST-INTEREST FACTORS

Respondent mother argues that the trial erred when it found that it was in the children's best interest to have her rights terminated. She stated that the decision was contrary to the testimony that she was well-bonded with the children and that she complied with her treatment plan. Respondent also argues that the trial court's failure to consider termination of fewer than all four children was erroneous because there was testimony that she bonded more with some of the children than others. A trial court's decision that termination is in the best interests of the children is reviewed for clear error. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). A decision of the trial court is clearly erroneous if "the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been made." *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003).

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). The trial court must find by a preponderance of the evidence that termination is in the best interests of the children. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "[R]egard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). The children's bond to the parent, the parent's parenting ability, and the children's need for permanency, stability, and finality are all factors for the court to consider in deciding whether termination is in the best interests of the children. *In re Olive/Metts Minors*, 297 Mich App at 41-42.

There is no doubt that respondent mother was unable to take care for the four children by herself. This can be seen through her admission in court that she requested that the children be removed because she was overwhelmed with taking care of them alone. In addition, she struggled to care for the children during parenting time, complained of being tired and left the children unsupervised, was verbally abusive to the children, and blamed them for their removal from home. Evidence also showed that her visits with the children were chaotic and lacked structure, that she was slow to respond to their needs and inquiries, and that she failed to provide them with emotional care when they craved it. There was also testimony that she struggled to manage three of the children for an extended time during parenting time. In fact, there was consistent and uncontradicted testimony of safety concerns during her parenting time with the children which resulted in multiple interventions by the caseworkers.

Respondent mother's argument that the trial court erred by failing to consider termination of her rights to fewer than all four children lacks merit. Although there was testimony that she did better during one-on-one visits with the children, she struggled even during those visits. For instance, during her one-on-one parenting time with SFR, she reported that she was not physically able to keep up with SFR. There was also testimony that SFR was frustrated during the visit because respondent mother was not paying attention to her. Throughout the duration of the case, respondents were consistently breaking up and coming back together, and resuming their abusive relationship. Although respondents denied that their relationship was still abusive,

there was evidence to show that respondent father had called the police at least three times after they had reunited. More troubling is the testimony that respondent mother resumed living with respondent father after his girlfriend kicked him out of her house for maltreating her minor children and cheating on her. Respondent father admitted that he referred to his ex-girlfriend's children as "assholes," and that he pushed spaghetti sauce "over" at her 11-year-old son. There was also testimony that respondent father had stopped his counseling and that he attempted suicide in March of 2015.

Parental rights may not be terminated on the basis of a party being a victim of domestic violence, but just because a party is a victim does not preclude termination if, for example, the party is also a perpetrator or fails to protect a child from abuse. *In re Plump Minors*, 294 Mich App 270, 273; 817 NW2d 119 (2011). The parties all acknowledged that the children's exposure to respondents' abusive and inconsistent relationship resulted in mental and emotional issues for the children, and clearly they suffered some physical harm as well, either directly or as collateral victims. Each child suffered their own individual mental and emotional problems due to their exposure to respondents' abusive and inconsistent relationship and lack of consistent nurturing. For instance, ARR was diagnosed with clear post-traumatic stress symptoms related to the physical abuse by respondent father. Testimony at trial established that during the period of parenting time, ARR was physically assaultive towards others, lied a lot, and turned to food for comfort. SFR also suffered severe mental health problems, and health professionals struggled with a diagnosis and treatment. It was reported that SFR engaged in regular outbursts during parenting time including slapping, pinching, swearing, and biting herself and others. SFR only showed improvement when parenting time with respondents was suspended. Further, there was also testimony that during the period of parenting time, RLR was exhibiting assaultive behaviors and was suspended from school for violent behaviors towards her classmates and adults. In addition, HSR was verbally abusive to others and demanded a lot of attention. Uncontradicted evidence showed that the children's behaviors improved significantly during the period parenting time was suspended. It was recommended that the children should not be reunified with respondents because it would be traumatizing for the children and would cause regression in their progress.

Moreover, respondent mother was diagnosed with "Major Depression, moderate, recurrent nature, physical abuse of a child by history, and on Axis II, Personality Disorder NOS with dependent and antisocial features." She had a history of depression, experienced suicidal ideation, and attempted suicide in 2008. Part of her treatment plan required that she maintain her mental health. A psychologist testified that she would need long-term medication because of her history of major recurrent depression. However, she admitted that she had stopped taking her medications in April of 2015. Respondent father, who was residing with respondent mother at the time of termination, also testified that he stopped taking his medications when he moved in with her, despite recommendation that he remain on medication long term in order to regulate his emotional behavior.

Further, between 2008 and September of 2015, respondents received numerous services from petitioner, in numerous counties, without any substantial progress. Indeed, there was testimony to show that there were no more services available to respondents as they had repeated and exhausted all the available services. Moreover, respondent mother had failed to make substantial improvement in her parenting skills and continued to maintain the same abusive and

inconsistent relationship that contributed to the children's initial removal. We hold that the trial court properly held that termination of her parental rights was in the best interest of the children.

## B. DUE PROCESS VIOLATION

Respondent mother also contends that the trial court failed to comport with due process requirements because petitioner created the circumstances that led to the termination of her parental rights when they suspended parenting time with the children. She argues that suspension of parenting time made it impossible for her to apply the parenting skills and coping mechanisms she was learning. This Court reviews an order terminating parental rights under the clearly erroneous standard. MCR 3.977(K). "This standard controls our review of 'both the court's decision that a ground for termination has been proven by clear and convincing evidence and, where appropriate, the court's decision regarding the child's best interests.' " *In re B and J*, 279 Mich App 12, 17; 756 NW2d 234 (2008). A decision of the trial court is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re JK*, 468 Mich at 209-210. Questions of constitutional law are reviewed de novo. *People v LeBlanc*, 465 Mich 575, 579; 690 NW2d 246 (2002).

Natural parents have a "fundamental liberty interest in the care, custody, and management of their child[ren]," and the state must therefore meet a high burden before terminating an individual's parental rights. *Santosky v Kramer*, 455 US 745, 753-754; 102 S Ct 1388; 71 L Ed 2d 599 (1982). The importance of a parent's "essential" and "precious" right to raise his child is well-established in our jurisprudence. *Hunter v Hunter*, 484 Mich 247, 257; 771 NW2d 694 (2009). Because "[t]his right is not easily relinquished," "to satisfy constitutional due process standards, the state must provide the parents with fundamentally fair procedures." *Id* (internal quotation marks omitted). "In order to comply with the guarantees of substantive due process, the state must prove parental unfitness by 'at least clear and convincing evidence' before terminating a respondent's parental rights." *In re B and J*, 279 Mich App at 23 citing *Santosky*, 455 US at 748. Michigan law fully comports with this requirement by requiring proof of at least one statutory ground by "clear and convincing evidence" before the family court may terminate a respondent's parental rights. MCR 712A.19b(3).

In this case, the trial court first suspended respondent's parenting time with SFR so that her mental and overall well-being could be evaluated. There was testimony to show that during parenting time, SFR engaged in regular outbursts, was wetting her pants, was crying consistently, and had expressed that she did not want to have parenting time with respondents. There was testimony that her behaviors were environmental, and not a result of mental issues. Therefore, it was in SFR's best interest to suspend parenting time so that she could be properly diagnosed and treated. In fact, there was testimony that after respondents' parenting time with SFR was suspended, her symptoms diminished significantly. Further, the court also suspended parenting time for ARR, RLR, and HSF based on expert testimony that continuing parental time would be harmful to the children because it was disrupting their stable lives in their foster homes. According to one psychologist:

> . . . [T]he children have been through a lot of trauma . . . as many years as they've been alive and the ongoing changing between the foster homes and visiting in the various home that the parent have had been a significant part of this

trauma that the children have suffered. But was has been consistent in the past four months is that parenting time visits before, during and after effect the children's emotional responsiveness. All four children really struggle with some severe traumatic effect and we aren't able to even address those until we can get them stable and they can't be stable when every week they get re-stressed. *During parenting time there is a lot of chaos in their (sic) inconsistency, shouting, negative responses*, so, even the children that are having some success within their current environment start to become a little more relaxed and stable, *they go back to mom and dad and the stressor increase again, their behavior regress, it's just a pattern of inconsistency*. (Emphasis added).

While some progress was being made, the conditions that led to adjudication and ultimately the termination of parental rights were not being sufficiently rectified with continued parental visitation; many aspects were exacerbated. Petitioner did not create these conditions by seeking to suspend parenting time and it was the conditions that justified termination. The suspension of parenting time alleviated some of the children's problems and on this record, it cannot be said that continued parenting time would have enabled respondent mother to be reunified with her children. There was no due process violation.

## C. SUFFICIENCY OF EVIDENCE

Respondent father argues that the trial court clearly erred by terminating his parental rights because petitioner failed to make reasonable efforts to provide him with parenting classes that addressed the children's special needs. This Court reviews an order terminating parental rights under the clearly erroneous standard. MCR 3.977(K). "This standard controls our review of 'both the court's decision that a ground for termination has been proven by clear and convincing evidence and, where appropriate, the court's decision regarding the child's best interests.' " *In re B and J*, 279 Mich App at 17. A decision of the trial court is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re JK*, 468 Mich at 209-210. Questions of constitutional law are reviewed de novo. *LeBlanc*, 465 Mich at 579.

Petitioner bears the burden of proving the existence of at least one of the Legislature's enumerated specific conditions to terminate a parent's parental rights by clear and convincing evidence. *In re JK*, 468 Mich at 210. "[R]egard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). To overturn the trial court, this Court must find that its decision was "more than just maybe or probably wrong." *In re Sours Minors*, 459 Mich 624, 633; 593 NW2d 520 (1999).

Respondent father argues that there was insufficient evidence to terminate his parental rights because petitioner did not make reasonable efforts to provide parenting classes specific to special-needs children. In light of the evidence presented that respondents received numerous services from petitioner from before 2008 to 2015, in numerous counties, in order to help with their parenting and mental health issues, this issue has no merit. There was testimony that there were no more services available to respondents because they had exhausted and reused all the available services. Despite all the services, counseling, and guidance respondent father received,

he testified that he did not learn anything from one of his parenting classes. When asked again if he had learned anything from the parenting class, respondent father responded, "A little bit. It was pretty much the same stuff that I learned in the first." He does not identify what specific service should have been provided that would have given him more guidance on dealing with his children or how, given his limited response to the services he received, additional services would have enabled him to properly care for his children. This is illustrated in testimony that additional sessions with respondents would not have created success in their parenting time with the children.

Further, respondent father was diagnosed with post-traumatic stress disorder, major recurrent depression, and moderate to severe physical abuse of a child. His treatment plan required that he obtain random substance abuse screens, maintain stable housing and income, and participate in individual counseling, parenting education, and individual therapy. It was recommended that he remain on his medication "long term" in order to regulate his emotional behavior. Testimony established that he did not maintain stable housing throughout the duration of the case as required under his treatment plan. Moreover, he admitted that he was not in counseling and that he had stopped taking his medication. Our Supreme Court has held that a parent's failure to comply with a treatment plan is evidence of the parent's failure to provide proper care and custody for a child. *In re JK*, 468 Mich at 214. More specific services would not have changed this result. Assuming arguendo that the State should have provided parenting classes specific to special-needs children, there was no error in terminating respondent father's parental rights because only one statutory ground is necessary to support terminating parental rights, *In re Powers Minors*, 244 Mich App 111, 118; 624 NW2d 472 (2000). Sections 19b(3)(c)(*i*), (3)(g), and (3)(j) were proved and a statutory basis for termination was therefore established.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Amy Ronayne Krause
/s/ Michael F. Gadola